```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

|                                   |                              |
|-----------------------------------|------------------------------|
| ANGEL OLIVARES,                   | HON. JEROME B. SIMANDLE      |
|     Plaintiff,| Civil No. 07-3476 (JBS)      |
| v.                                | **OPINION**                  |
| UNITED STATES OF AMERICA, et al., |                              |
|     Defendants.|                             |

APPEARANCES:

Mr. Angel Olivares
#54221-054
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
    Plaintiff pro se

John Andrew Ruymann, AUSA
OFFICE OF THE U.S. ATTORNEY
402 East State Street
Suite 430
Trenton, NJ 08608
    Attorney for Defendants

**SIMANDLE**, District Judge:

    Plaintiff is a prisoner confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") who alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment through their deliberate indifference to his medical needs.  He filed this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), naming as Defendants the United States, as well as various FCI Fort Dix and Bureau of Prisons

("BOP") employees in their individual and official capacities.

Presently before the Court is the motion to dismiss [Docket Item 23] filed by Defendants Patel, Sulayman, Iwuagwu, and Phillips in their individual capacities (the "Individual Defendants" or "Defendants" hereinafter). For the reasons explained below, Defendants' motion will be denied.

**I.   BACKGROUND**

    **A.   Facts**

Plaintiff is a federal prisoner who is presently confined at FCI Fort Dix. According to the Complaint, Plaintiff has a rare and disabling bone disorder called osteogenesis imperfecta. (Compl. ¶ 6.) As is explained in the Complaint, osteogenesis imperfecta is a condition which causes bones to be extremely fragile and easily susceptible to fracturing. (Id.)

Plaintiff was arrested in New York on October 2, 2002 and was confined at the Metropolitan Detention Center in Brooklyn ("MDC Brooklyn"). (Id. at ¶ 7.) Upon his arrival at MDC Brooklyn, Plaintiff informed the MDC staff of the fact that he suffered from osteogenesis imperfecta. (Id.) As a result of an accident that took place on September 2, 2003 at the detention center, Plaintiff injured his left knee, and in late 2003 and early 2004, Plaintiff was taken to see two orthopedic surgeons. (Id. at ¶¶ 8-12.) The first orthopedist performed an MRI on Plaintiff's knee, which revealed that Plaintiff was suffering

2

from a medial meniscus tear, a lateral meniscus tear, and chronic anterior cruciate ligament ("ACL") tear. (Id. at ¶ 11.) The second of these surgeons determined on February 17, 2004 that Plaintiff's knee was very unstable, and on account of Plaintiff's osteogenesis imperfecta, recommended "urgent surgery" to correct the problem and to prevent bone deformation and worsening of Plaintiff's knee. (Id. at ¶ 12.) The medical staff at MDC Brooklyn subsequently classified Plaintiff's medical condition as a care level 4 condition, which, according to the Complaint, "meant that his medical condition was very critical and required immediate attention to avoid further injuries to Plaintiff." (Id. at ¶ 16.)

According to the Complaint, notwithstanding the fact that the second orthopedist recommended that Plaintiff's need for surgery was "urgent," the surgery was never scheduled, prompting Plaintiff to file a series of administrative complaints. (Id. at ¶¶ 13-18.) According to Plaintiff, by August or September 2004, his administrative complaints regarding the urgency of his medical needs and the failure of MDC Brooklyn's staff to address those needs had reached Defendant Phillips in the BOP's Office of Medical Designations and Transportation. (Id. at ¶¶ 79-80.)

On September 28, 2004, Plaintiff was sentenced for his conviction on federal charges, and, according to Plaintiff, the sentencing judge recommended that Plaintiff be placed in a

facility capable of treating his serious medical condition. (Id. at ¶ 81.) In spite of this recommendation from the sentencing court, and despite her awareness of Plaintiff's urgent need for surgery, Plaintiff alleges that Defendant Phillips designated Plaintiff to a correctional institution incapable of meeting his medical needs – FCI Fort Dix – rather than a federal medical center. (Id. at ¶¶ 82-90.) When Defendant Phillips ultimately approved Plaintiff for transfer to a medical facility in August 2005, she classified Plaintiff's need for surgery as elective rather than emergent, notwithstanding her alleged knowledge of the urgent nature of Plaintiff's need, which resulted in a seven-month delay in Plaintiff's access to surgery. (Id. at ¶¶ 86-87.) Plaintiff alleges that Defendant Phillips' decisions were driven by budgetary considerations rather than concerns over the critical nature of Plaintiff's medical needs, and was made in spite of Defendant Phillips' awareness that Plaintiff's condition required immediate medical attention that could not be provided at FCI Fort Dix. (Id. at ¶¶ 85, 90.)

Plaintiff arrived at FCI Fort Dix on October 27, 2004. (Id. at ¶ 20.) From the time Plaintiff arrived at FCI Fort Dix until March 21, 2006, when he was transferred to the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"), (id. at ¶ 88), Plaintiff alleges that the two physician Defendants, Drs. Patel and Sulayman, refused to provide Plaintiff with certain

orthopedist-recommended treatments, and that the failure to provide these treatments exacerbated Plaintiff's condition.  (Id. at ¶¶ 25, 27, 47.)  Plaintiff specifically alleges that Drs. Patel and Sulayman refused to provide Plaintiff with bilateral knee braces, which multiple consulting orthopedists recommended were necessary to prevent Plaintiff's knees from buckling, (id. at ¶¶ 25, 44), and that Dr. Sulayman refused to provide Plaintiff with a walker.  (Id. at ¶ 47.)  Plaintiff alleges that these Defendants' conduct was "sadistic[]" and motivated by "malic[e]," and he further alleges that these treatment decisions were driven by "budgetary reasons," not medical considerations.  (Id. at ¶¶ 1, 65, 91, 93.)  Plaintiff also appears to allege that similarly improper motives led these physician Defendants to mischaracterize Plaintiff's allegedly urgent need for knee surgery as an elective procedure, rather than an emergent medical need, which delayed Plaintiff's knee surgery by seven months and contributed to the deterioration of his condition.  (Id. at ¶¶ 50, 90, 95, 98.)

Plaintiff asserts similar allegations against Defendant Iwuagwu, the Health Services Administrator ("HSA") at FCI Fort Dix.  (Id. at ¶ 60.)  According to Plaintiff, as the institution's HSA, Defendant Iwuagwu's approval was necessary for the provision of certain medical services which the consulting orthopedists recommended be provided to Plaintiff, including the

bilateral knee braces the orthopedists had prescribed. (Id. at ¶ 65.) Plaintiff also alleges that Defendant Iwuagwu's approval was necessary before Plaintiff could be transferred to a federal medical center for surgery. (Id. at ¶ 69.) Plaintiff alleges that Defendant Iwuagwu "intentionally and sadistically" refused to approve the request for knee braces and delayed Plaintiff's transfer to a medical center for seven months, and further alleges that Defendant Iwuagwu's interference with Plaintiff's urgent need for these medical services was motivated by budgetary, not medical, considerations. (Id. at ¶¶ 65, 68, 70, 73.)

As a result of these decisions by Defendants, Plaintiff alleges that his condition deteriorated to the point that his knee gave way on November 16, 2005, causing him to fall, fracture his left patella, and rupture his left quadricept muscle. (Id. at ¶ 37.) By the following day, Plaintiff was "at the brink of losing his leg if surgery was not immediately performed," and Plaintiff was admitted to a local hospital for surgery. (Id. at ¶¶ 39-41.) The orthopedic surgeon who performed the surgery upon Plaintiff's patella and quadricept recommended that Plaintiff receive the long-prolonged ACL surgery within four weeks, but Plaintiff was not transferred to FMC Rochester for four months. (Id. at ¶¶ 42-43.)

6

**B.   Procedural History**

Plaintiff filed this action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u> on July 26, 2007, alleging that Defendants violated his Eighth Amendment rights.  The Individual Defendants subsequently filed the motion to dismiss presently under consideration in lieu of an answer [Docket Item 23].  Plaintiff filed a motion requesting an extension of time to file a response, which Defendants did not oppose,[1] and subsequently filed his opposition to Defendants' motion.

**II.  DISCUSSION**

**A.   Standard of Review**

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those

---

[1] Plaintiff's unopposed motion for an extension of time to file [Docket Item 29] will be dismissed as moot.

facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id.

Phillips, 515 F.3d at 234.[2]

---

[2] Additionally, the Court recognizes that "pro se complaints in particular should be construed liberally," and that "nothing more is required of [plaintiffs in civil rights] cases than the notice pleading requirement of Rule 8" of the Federal Rules of Civil Procedure. Alston v. Parker, 363 F.3d 229, 233-34

**B.     Analysis**

In their motion to dismiss, Defendants argue that Plaintiff's Eighth Amendment claims fail to state a claim for which relief can be granted, and that even if Plaintiff had adequately alleged an Eighth Amendment violation, they are entitled to qualified immunity.[3]  In light of "the importance of resolving immunity questions at the earliest possible stage in litigation," the Court addresses the immunity analysis at the outset.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Because, as is explained infra, the first step of the qualified immunity analysis "is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity," Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007), the substantive issues raised by Defendants' motion to dismiss are effectively subsumed within the immunity analysis.  See Thomas v. Ferguson, 361 F. Supp. 2d 435,

---

(3d Cir. 2004) (citations omitted).

[3] Defendants also appear to argue that Plaintiff has failed to state a claim that Defendants violated his due process rights. Because the Court does not understand Plaintiff to be asserting a due process claim, the Court does not address the merits of this argument in detail.  While Defendants correctly observe that a prisoner has no protected liberty interest in accessing an administrative remedy procedure or institutional program, see Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Sandin v. Connor, 515 U.S. 472 (1995), Plaintiff's claims do not appear to assert that such a liberty interest was interfered with. Plaintiff instead is advancing a much more straightforward claim that Defendants were deliberately indifferent to his serious medical needs.

442 n.7 (D.N.J. 2004).

     1.   Qualified Immunity Standard

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing an officer who "made a reasonable mistake about the legal constraints on his actions." Curley, 499 F.3d at 206-07 (internal quotations and citations omitted). In Saucier v. Katz, the Supreme Court described the two-step inquiry courts undertake in determining whether a governmental officer is entitled to qualified immunity. First, the Court must address whether "the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. As the Court of Appeals noted in Curley, "the first step of the analysis addresses whether the force used by the officer was excessive," which is "not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. If in this first step the Court finds that there was no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

"If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the

10

analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F.3d at 207 (quoting Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007)). The inquiry under this second step addresses whether "the right was clearly established." Saucier, 533 U.S. at 201. The analysis of whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition," in order to assess "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.

    2.   Step One – Allegations of Eighth Amendment Violations

As the following discussion makes clear, the Court, taking Plaintiff's allegations as true and construing the Complaint in the light most favorable to Plaintiff, see Phillips, 515 F.3d at 231, finds that Plaintiff has stated a claim that Defendants' "conduct violated . . . [his Eighth Amendment] right[s]." Saucier, 533 U.S. at 201. The Eighth Amendment proscribes the imposition of cruel and unusual punishment, and the Supreme Court has long interpreted this prohibition as "establish[ing] the government's obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). At the same time,

> [a]lthough prison systems have a duty to provide prisoners with adequate medical care, the law is clear that simple medical malpractice is insufficient to

> present a constitutional violation. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. In order to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show deliberate indifference to a serious medical need.

<u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993) (internal quotations and citations omitted). In short, the "<u>Estelle</u> standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." <u>Spruill v. Gillis</u>, 372 F.3d 218, 235-36 (3d Cir. 2004) (internal quotations and citations omitted).

Plaintiff's allegations are more than sufficient to satisfy the serious medical conditions prong of this inquiry. "[A]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Johnson v. Snyder</u>, 444 F.3d 579, 584-85 (7th Cir. 2006) (internal quotations and citations omitted). Plaintiff's bone disorder, osteogenesis imperfecta, not only was recognized by numerous physicians (including Drs. Patel and Sulayman) as requiring treatment, but its debilitating effects, as alleged in the Complaint, would easily be recognized by a layperson as requiring medical attention. (Compl. ¶ 6.) As Plaintiff alleges in the Complaint, multiple physicians acknowledged that Plaintiff's condition was "critical" and

required "urgent surgery," (id. at ¶¶ 12, 16), and the fact that Plaintiff's condition caused his knees to buckle such that Plaintiff would fall and break certain already-fragile bones would certainly be recognized by laypersons as a condition calling for medical attention. Johnson, 444 F.3d at 584-85. "Naturally, this will need to be fleshed out with further evidence (e.g., expert medical testimony), but at the motion-to-dismiss stage, the complaint is certainly adequate in this respect." Spruill, 372 F.3d at 236.

As to whether Plaintiff's pleadings sufficiently allege "deliberate indifference on the part of the prison officials," the Court again finds, at this stage in the litigation, that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against each of the Defendants. "Deliberate indifference is more than negligence and approaches intentional wrongdoing . . . . The standard requires that an officer have subjective awareness of the serious medical need and then act with indifference to that need." Johnson, 444 F.3d at 585 (internal quotations and citations omitted). As the Court of Appeals has recognized,

> deliberate indifference could exist in a variety of different circumstances, including where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care[,] or where short of absolute denial necessary medical treatment is delayed for non-medical reasons, or where prison authorities prevent an inmate from receiving recommended treatment.

13

Durmer, 991 F.2d at 68 (internal quotations and citations omitted). The Court of Appeals has likewise noted that "the threat of tangible residual injury can establish deliberate indifference," Spruill, 372 F.3d at 235 (internal quotations and citations omitted), and that "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations and citations omitted).

As to Plaintiff's claims against Drs. Patel and Sulayman, the Court finds that Plaintiff's pleadings adequately allege that both physician Defendants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has alleged that Drs. Patel and Sulayman, motivated both by "malic[e]" and by "budgetary reasons," (Compl. ¶¶ 91, 93), withheld treatment that Plaintiff alleges was medically necessary (the orthopedist-recommended knee braces) and delayed Plaintiff's access to urgently needed ACL surgery. Cf. Durmer, 991 F.2d at 68 (in denying summary judgment as to issue of deliberate indifference, noting that "[t]here is some evidence in the record suggesting that Dr. O'Carroll might have had a motive for deliberately avoiding physical therapy, namely, that physical therapy would have placed a considerable burden and expense on the prison").

Plaintiff further alleges that this conduct by Defendants Patel and Sulayman contributed to the deterioration of Plaintiff's knee, which caused him to fall, fracture his patella, and rupture his quadricept muscle.  While Defendants Patel and Sulayman may later come forward with evidence undermining, <u>inter alia</u>, Plaintiff's allegations that malice and financial considerations motivated their treatment decisions, at this stage in the litigation, the Court finds that Plaintiff has adequately alleged that these Defendants were deliberately indifferent to his medical needs.  <u>See</u> <u>Spruill</u>, 372 F.3d at 237-38 ("Since at this stage we are making no judgment about what actually happened, but only about the sufficiency of the pleadings, we must take [Plaintiff's] factual allegations, and the reasonable inferences therefrom, as true"); <u>see also</u> <u>Durmer</u>, 991 F.2d at 68 (deliberate indifference shown where "necessary medical treatment is delayed for non-medical reasons").[4]

---

[4] Defendants are correct that, when read in isolation, many of the allegations in the Complaint sound in mere negligence rather than deliberate indifference.  For instance, Plaintiff alleges that when Dr. Sulayman evaluated Plaintiff after his November 16, 2005 fall, he "failed to properly diagnose Plaintiff . . . by not noticing that inmate's quadricept muscle was actually ruptured and the patella had been fractured."  (Compl. ¶ 54.)  Because "simple medical malpractice is insufficient to present a constitutional violation," <u>Durmer</u>, 991 F.2d at 67, this allegation and similar claims asserted throughout the Complaint would not, without more, suffice to state an Eighth Amendment claim.  However, as the Court explained, <u>supra</u>, the fact that Plaintiff alleges facts sufficiently suggestive of deliberate indifference as to Defendants Patel and Sulayman elsewhere in the Complaint forecloses the argument that Plaintiff's claims are

The pleadings in the Complaint are likewise sufficient to allege that Defendants Iwuagwu and Phillips were deliberately indifferent to Plaintiff's serious medical needs.  Like Defendants Patel and Sulayman, Defendants Iwuagwu and Phillips are alleged to have interfered with and delayed Plaintiff's access to urgently needed medical care "for non-medical reasons," id. – namely, the expense of giving Plaintiff the surgery and knee braces he claims were medically necessary – notwithstanding their alleged knowledge of the inadequacy of the treatment he was receiving at FCI Fort Dix.  See Durmer, 991 F.2d at 68.  While upon a motion by Defendants for summary judgment, Plaintiff will have to come forward with evidence demonstrating, inter alia, that Defendants Iwuagwu and Phillips knew of Plaintiff's condition and its seriousness, that they knew Plaintiff was receiving inadequate medical care at FCI Fort Dix, and that they interfered with Plaintiff's access to more efficacious treatment for non-medical reasons, at this stage, the pleadings adequately state an Eighth Amendment claim against Defendants Iwuagwu and Phillips.

It is true that, with regard to non-medical prison officials, the Court of Appeals has explained that "absent a

---

limited to medical malpractice claims.  See Phillips, 515 F.3d at 231 (the Court must "accept all factual allegations as true[] [and] construe the complaint in the light most favorable to the plaintiff" where defendant moves to dismiss).

reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236. The Court does not find, at this stage, that this limitation undermines the sufficiency of Plaintiff's pleadings. Plaintiff has adequately alleged that Defendants Iwuagwu and Phillips had actual knowledge of Plaintiff's medical needs and the inadequacy of the care he was receiving at FCI Fort Dix, and that Defendants Iwuagwu and Phillips nonetheless deliberately interfered with Plaintiff's access to more effective treatment because providing such treatment would have been expensive. (Compl. ¶¶ 65, 84-86, 90.) At the motion-to-dismiss stage, these pleadings are sufficient to state an Eighth Amendment claim.

3. Clearly Established Right

Having found that Plaintiff has adequately alleged that Defendants violated his Eighth Amendment rights, the Court next "asks whether immunity should nevertheless shield the officer[s] from liability." Curley, 499 F.3d at 207 (quoting Scott, 127 S. Ct. at 1774). Where, as here, the qualified immunity defense is raised in a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff," Phillips, 515 F.3d at 231 (citation

17

omitted), and assess "whether it would be clear to a reasonable officer that his conduct [as alleged in the Complaint] was unlawful in the situation he confronted." Saucier, 533 U.S. at 201-02.

Accepting Plaintiff's allegations as true, the Court finds that it would have been clear to a reasonable officer that the actions Defendants are alleged to have taken violated a "clearly established" constitutional right. Id. at 201. Notwithstanding Defendants' efforts to characterize Plaintiff's claims as being limited to his dissatisfaction with the competence of the prison physicians, as the preceding discussion makes clear, Plaintiff's allegations go well beyond claims of simple medical malpractice. Rather, Plaintiff has alleged that each Defendant, motivated by malice and/or budgetary concerns, delayed, withheld, or otherwise interfered with Plaintiff's access to treatment he alleges was medically necessary, and that Plaintiff's medical condition deteriorated and led to further serious injury as a result of the withheld care. In light of the abundance of precedent holding unambiguously that Estelle's deliberate indifference standard is satisfied where "necessary medical treatment is delayed for non-medical reasons," Durmer, 991 F.2d at 67, and that "the threat of tangible residual injury can establish deliberate indifference," Spruill, 372 F.3d at 235, the Court finds that reasonable officials engaged in the conduct alleged in the

18

Complaint would understand that such conduct was prohibited by the Eighth Amendment.  See Saucier, 533 U.S. at 201-02.

While the issue of qualified immunity may be revisited in a later motion for summary judgment, at this stage of the litigation, in which the Court must credit Plaintiff's factual allegations and construe the Complaint in the light most favorable to Plaintiff, the Court finds that Defendants are not entitled to qualified immunity.

### III. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss will be denied.  The accompanying Order will be entered.


**September 15, 2008**              **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    United States District Judge