```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ANGEL OLIVARES, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-3476 (JBS/AMD) |
| v. | |
| UNITED STATES OF AMERICA, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Frank L. Corrado, Esq.
Joshua A. Donohue, Esq.
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08620
    Counsel for Plaintiff

Paul J. Fishman
United States Attorney
    By:  John Andrew Ruymann
         Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
402 East State Street, Room 430
Trenton, NJ 08608
    Counsel for Defendants


**SIMANDLE**, District Judge:

**I.   INTRODUCTION**

       This matter involving alleged inadequate medical treatment for a federal prisoner is before the Court on Defendants' motion for summary judgment [Docket Item 81].  The principal issue to be determined is whether Plaintiff has exhausted his administrative

remedies regarding his remaining claim for denial of a knee brace and walker, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). As explained in today's Opinion, because the Court finds that Plaintiff did fail to exhaust his administrative remedies for the only claim still in active dispute, the Court will grant Defendants' motion.

II.   **BACKGROUND**

Plaintiff, Angel Olivares, filed this lawsuit against the United States and four employees of the Bureau of Prisons in both their official and individual capacities based on Defendants' placement and transfer decisions regarding Mr. Olivares's incarceration as well as their alleged failure to provide adequate medical care. Mr. Olivares alleges that the individual defendants were negligent and deliberately indifferent to his medical needs when he was imprisoned at FCI Fort Dix from October 27, 2004 until he was transferred on March 21, 2006.[1] The

---

[1] The Complaint, drafted by Mr. Olivares before counsel was appointed to him, is unclear about the particular legal causes of action it brings, but makes repeated references to § 1983, Bivens, the Eighth Amendment, and negligence. In this Court's Opinion of September 15, 2008, the Court interpreted the Complaint to bring constitutional claims pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Defendants assert that they now understand Plaintiff to be bringing a claim under the Federal Tort Claims Act as well, presumably based on the Complaint's reference to tortious conduct and negligence (Compl. ¶¶ 1-2). A liberal reading of the Complaint does allow for the FTCA claims in addition to the Bivens claims.

individual defendants are Dr. Patel (a Medical Doctor and former Clinical Director at FCI Fort Dix), Dr. Sulayman (a Medical Doctor at FCI Fort Dix), Charleston Iwuagwu (the former Health Services Administrator at FCI Fort Dix) and Yvonne Phillips (the former Chief of the Bureau of Prisons' Office of Medical Designations and Transportation at the Bureau's Central Office in Washington, D.C.).

According to Mr. Olivares's Complaint, prior to his transfer to Fort Dix, he fell down and injured his left knee. (Compl. ¶¶ 8-12.) Mr. Olivares suffers from an illness known as osteogenesis imperfecta that complicates his medical care; the condition causes a group of disorders of bone formation and results in abnormally fragile bones. As a result of his fall, Plaintiff was suffering from a medial meniscus tear, a lateral meniscus tear, and chronic anterior cruciate ligament tear. (Id. ¶ 11.)

On September 28, 2004, Mr. Olivares was sentenced for his conviction on federal charges, and, according to Mr. Olivares, the sentencing judge recommended that he be placed in a facility capable of treating his serious medical condition. (Id. ¶ 81.) Mr. Olivares was placed in FCI Fort Dix rather than a federal medical center. (Id. ¶¶ 82-90.)

At Fort Dix, Mr. Olivares maintains that he was not provided adequate care for his knee injury, and his transfer to a more

suitable facility was unnecessarily and maliciously delayed. On January 5, 2006, Mr. Olivares's orthopedist recommended a specialized type of knee brace for his left knee, and noted that if problems persisted then he would need surgery. (Defs.' Statement of Undisputed Material Facts ¶ 26i.) Mr. Olivares's Complaint alleges that he did not receive the recommended brace or recommended surgery, and that his condition deteriorated to the point that his knee gave way on November 16, 2005, causing him to fall, fracture his left patella, and rupture his left quadriceps muscle. (Id. ¶ 37.) By the following day, Plaintiff was "at the brink of losing his leg if surgery was not immediately performed," and Plaintiff was admitted to a local hospital for surgery. (Id. ¶¶ 39-41.) The orthopedic surgeon who performed the surgery upon Plaintiff's patella and quadriceps recommended that Plaintiff receive the long-prolonged ACL surgery within four weeks, but Plaintiff was not transferred to a federal medical center for four more months. (Id. ¶¶ 42-43.)

Mr. Olivares's Complaint claims that Defendants breached their common law duties and violated his Eighth Amendment rights in numerous ways: Defendant Phillips failed to initially place him in a facility capable of handling his needs (Compl. ¶¶ 82, 84-85, 96); Defendants collectively failed to inform proper authorities that his condition could not adequately be addressed at Fort Dix and did not immediately initiate medical transfer

4

documents (Compl. ¶¶ 32, 63, 90); Defendants Patel, Sulayman and Iwaugwu denied him the recommended knee braces and the recommended knee surgery, the absence of which led to his fall in the institution dining hall on November 16, 2005 in which he suffered a fractured left patella and ruptured left quadricep muscle (Compl. ¶¶ 25-31, 65, 91, 95); Defendants Sulayman and Iwaugwu failed to provide plaintiff with a walker (Compl. ¶¶ 47, 66-67, 93); Defendant Sulayman improperly diagnosed him after his fall in the institution dining hall on November 16, 2005 (Compl. ¶¶ 38-54, 94); Defendants Patel, Sulayman and Iwuagwu failed to properly investigate his grievances regarding his medical care (Compl. ¶¶ 62, 97); and Defendants delayed his transfer to a federal medical center for seven months, in part because they misclassified the urgency of his need for transfer (Compl. ¶¶ 50, 68-73, 86-87, 98).[2]

In the present motion, Defendants argue that they are entitled to summary judgment on both procedural and substantive grounds: they contend that Mr. Olivares's claims are foreclosed because he did not exhaust his administrative remedies; that the claims are barred by the relevant statute of limitations; that Mr. Olivares has failed to adduce the requisite evidence for his

---

[2] Mr. Olivares's administrative claim submitted under the Federal Tort Claims Act, in which he claims he received improper medical care, was received by the Bureau of Prisons on August 2, 2006, and denied by the Bureau on January 29, 2007.

claims; and that Defendants are entitled to qualified immunity. For his part, Mr. Olivares only addresses the claims against Defendants Patel and Sulayman related to the specialized knee brace and walker. As explained in the following sections, because the Court finds that this sole remaining claim is foreclosed because Mr. Olivares did not exhaust his administrative remedies as to this claim, as required by the PLRA, the Court will grant summary judgment to Defendants without reaching the rest of Defendants' arguments.

**III. DISCUSSION**

    **A. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact. Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993). However, the court will view any evidence in favor of the nonmoving party and extend any

reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### B. Summary Judgment As To Claims Other Than Denial of Knee Brace and Walker

Mr. Olivares's opposition to Defendants' motion discusses only the conduct of Defendants Patel and Sulayman. Mr. Olivares makes no reference to Defendants Phillips or Iwuagwu, or the adequacy of the claims based on the initial assignment to FCI Fort Dix, the initiation and delay in transfer, or any other claim except the provision of a knee brace or walker. Thus, Mr. Olivares implicitly concedes that summary judgment as to all Defendants and claims is warranted, except for summary judgment as to Defendants Patel and Sulayman related to the denial of a knee brace and walker.

In addition to Mr. Olivares's abandonment of these claims, the Court independently finds that summary judgment is appropriate as to all claims against Defendants Phillips and Iwuagwu, and as to the claims other than those brought against Defendants Patel and Sulayman based on the failure to provide a

7

knee brace or walker.  Mr. Olivares admits that Defendant Phillips played no role in any action discussed in the Complaint other than to have supervised people who made the designation decision.  (Defs.' Statement of Material Facts ¶ 55.)  Similarly, Mr. Olivares admits that other than being a supervisor, Defendant Iwuagwu played no role in patient care decisions, and there does not appear to be any evidence that he took (or refused to take) any action relevant to the case other than investigating Mr. Olivares's grievance.  (Id. ¶¶ 53, 58.)[3]  Mr. Olivares agrees that Dr. Nelson, not a named Defendant, is who made the decision to downgrade the urgency of his transfer request.  (Id. ¶¶ 41-43.)  Finally, it is also now undisputed that Mr. Olivares was offered and declined surgery on his left knee to be performed in a local hospital on September 8, 2005.  (Id. ¶¶ 45-48.)  The alternative was for the surgery to be performed in a federal medical center, which Mr. Olivares admits is what Dr. Sulayman put in a request for on August 15, 2005, shortly after such surgery was recommended.  (Id. ¶¶ 26m-n, 36.)

　　The only issue still in contention is whether Mr. Olivares has adduced sufficient evidence to support a claim against Defendants Patel and Sulayman with respect to the failure to

---

[3] Additionally, this claim regarding improper investigation into Mr. Olivares's grievance as well as Mr. Olivares's claim regarding improper diagnosis after his November 2005 fall were not raised in any administrative grievance, requiring dismissal as explained in Part C.1.

provide him a knee brace, and with respect to Defendant Sulayman with respect to the provision of a walker.

**C. Exhaustion of Administrative Remedies**

1. <u>Standard for Exhaustion</u>

Defendants contend that Mr. Olivares only exhausted his administrative remedies as to his claims related to transfer for surgery, and so the rest of his claims — including those related to the knee brace and walker — must be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). See Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000) (holding that § 1997e applies to Bivens actions). The dispute on this issue is how to construe the scope of Mr. Olivares's grievance.

Whether a prisoner properly exhausted a claim is a determination made by evaluating compliance with the prison's specific grievance procedures. Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). In particular, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not the PLRA, that define the

boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007).  The BOP's administrative remedy procedure is addressed in 28 C.F.R. § 542.1 and Program Statement 1330.13. Under that procedure, an inmate has not exhausted his available remedies until he has properly filed a complaint at all three levels and been denied at all three levels.  See 28 C.F.R. § 542.10-.19.

Neither the federal regulations nor the 14-page program statement outlining the BOP administrative remedy procedures offer guidance as to the specificity of grievance claims, and contain no rules analogous to Rule 8, Fed. R. Civ. P.  The closest they come to discussing specificity is § 542.14(c)(2), which requires: "The inmate shall place a single complaint or a reasonable number of closely related issues on the form."  See Freeman v. Inch, No. 3:04-CV-1546, 2005 WL 1154407, at *5 (M.D. Pa. 2005); Yousef v. Reno, 254 F.3d 1214, 1222 n.3 (10th Cir. 2001) ("[T]he instructions do not indicate the specificity with which a pro se applicant must describe his or her grievances.  In order to avoid future confusion, we suggest the Attorney General consider providing pro se applicants more direction in the form application.")

The Third Circuit Court of Appeals has not yet articulated the standard of factual specificity required when a prison's grievance procedures do not specify the requisite level of

10

detail.  However, the Second, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits Courts of Appeals have all adopted the standard that, in the absence of more specific procedures, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002) (collecting cases).  But see Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir.2000) (requiring greater specificity).  Although the Third Circuit has not explicitly adopted this standard, it has strongly suggested that it is appropriate.  See Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) ("[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.") (quoting Jones v. Bock, 549 U.S. 199 (2007) (quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004))).

The question is therefore is whether Mr. Olivares's grievance alerted the prison to the nature of the wrong underlying his claim related to the alleged refusal to provide him with a knee brace and walker.

### 2.  Content of Case No. 389820

The parties agree that Case No. 389820 is the only administrative grievance filed by Mr. Olivares that was

11

completely exhausted. This grievance was filed on September 15, 2005. (Moran Decl. Ex. 1 at 1.) The initial request for an administrative remedy stated, "This request has to do with the present status, of the medical attention that is needed. For the past twenty three (23) months I have been trying to obtain the proper medical attention for an injury that I sustained while under the custody of the B.O.P." (Moran Decl. Ex. 1 at 1.) Mr. Olivares relates that he has been trying to receive care for his left knee injury, and that although he has received extensive diagnosis and recommendations for therapy, he has not received the appropriate treatment. He states that he has been recommended for transfer to a medical center, which has not yet occurred. The relief he seeks in the initial request is for furlough transfer to obtain necessary medical care. The document closes by noting that "prolonging such surgery would be considered cruel and unusual punishment and even deliberate indifference." (Moran Decl. Ex. 1 at 2.)

   Warden John Nash's October 24, 2005 response rejects the relief proposed by Mr. Olivares because "[a] review of your medical records indicates that you have been seen on numerous occasions by Physicians, Mid-Level Practitioners and Specialist and treated adequately. Furthermore, you have been approved for redesignation to FMC Devens and are waiting for bed space." (Moran Decl. Ex. 2, at 1.) Warden Nash added, "You are advised

12

to report to Health Services Staff during sick call triage if you feel your right knee is being damaged, for an evaluation and treatment, as necessary."  (Moran Decl. Ex. 2, at 1.)

On November 11, 2005, Mr. Olivares appealed the Warden's decision, complaining that due to the staff's failure to treat his left knee issue he has sustained damage to his right knee, and reiterating that he has not received proper treatment.  He then proposes that he be furloughed or temporarily released to acquire care at his own expense, or that his transfer be expedited.  This appeal was denied on the same grounds as the Warden's denial, finding that "Medical staff advise you are receiving appropriate medical treatment."  (Moran Decl. Ex. 4 at 1.)

Mr. Olivares's final appeal to the Central Office dated January 24, 2006 reiterated that "[t]he purpose for such appeal is due to the continuous delay in receiving the needed surgeries and therapy for both of my knees."  (Moran Decl., Ex. 5 at 1.)  He notes that his numerous requests for treatment have been ignored, and that as a result he sustained a fall in the cafeteria causing him serious injury.  He writes, "This injury could have been avoided if the Bureau of Prisons would have gotten my surgery done (24) months ago."  (Moran Decl., Ex. 5 at 2.)  The Central Office denied the appeal because the recommended surgery was classed as elective, and therefore the transfer did

13

not take priority over more serious medical problems.  (Moran Decl., Ex. 6.)

       3.  Scope of Claims

Mr. Olivares's grievance did not sufficiently alert prison officials to his claim that he should have gotten a brace or walker.  It is true, as Mr. Olivares now contends, that he made it clear that he was not receiving the care and treatment he felt he needed, as recommended by his doctors.  But his grievance identifies the relevant care as transfer and surgery, and did not mention any particular care he sought but did not obtain at Fort Dix, undermining any inference that there was some wrong that could be remedied inside the walls of that prison.  It is unreasonable to expect prison officials to have read his grievance to refer both to the denial of surgery and transfer, upon which the submissions focus, as well as an unmentioned, implicit complaint that Mr. Olivares's cane was insufficient and that he needed a knee brace or walker that had been requested and denied.

The point of the grievance is to alert prison officials to a problem, so they have an opportunity to correct it.  Jones, 549 U.S. at 218; <u>Williams</u>, 482 F.3d at 640.  The wrong to which a prisoner must alert the prison officials cannot be construed so broadly as to undermine the basic purpose of the grievance

14

process.  If Mr. Olivares believed in September 2005 that the failure to provide him a knee brace or walker was a problem, he needed to say that in his grievance to give prison officials the chance to correct the problem.  Mr. Olivares did not mention the knee brace or walker in the grievance, and when his request for relief was denied because the Warden said he was already being scheduled for transfer, Mr. Olivares's appeal continued to reference only the surgery he sought.[4]  The Court concludes that Mr. Olivares failed to alert prison officials to this alleged wrong for which he now seeks redress, and therefore failed to exhaust his administrative remedies requiring dismissal of the claim under 42 U.S.C. § 1997e(a).

**IV.  CONCLUSION**

Because the sole claim that Mr. Olivares still contests was never brought to the attention of prison officials through the grievance process, the Prison Litigation Reform Act requires this

---

[4] Though it is not relevant to whether the grievance raised the issue, it is unclear whether Mr. Olivares even made this request to his doctors.  It is undisputed that Mr. Olivares never requested the specialized knee brace, and instead was given an ordinary brace and a cane to use for the purpose of stabilizing his knee while walking.  (Defs.' Statement of Undisputed Facts ¶¶ 26b-n, 28-34; Pl.'s Counter-Statement of Undisputed Fact ¶ 11.) There is a dispute of fact over whether Mr. Olivares requested a walker from Dr. Sulayman, but there is no dispute that Dr. Sulayman was not the correct person to make such a request to.

Court to grant Defendants' motion.  The accompanying Order will be entered.

**December 16, 2010**          **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                               United States District Judge